UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Darren Brady

    v.                                                  Case No. 19-cv-00655-SM

Weeks Medical Center and John Ford, M.D.

**REPORT AND RECOMMENDATION**

Before the court is pro se plaintiff Darren Brady's Complaint (Doc. No. 1), raising claims under 42 U.S.C. § 1983; the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; the Stark Act, 42 U.S.C. § 1395nn; the "Human Rights Act of 1998"; New Hampshire's "Law against Discrimination," N.H. Rev. Stat. Ann. ("RSA") ch. 354-A; and state tort law. The Complaint is before this magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).

**Background**

Plaintiff alleges that on June 2, 2018, defendant Dr. John Ford, identified as an ER doctor,[1] and defendant Weeks Medical Center ("WMC") refused to treat him in the WMC emergency room for "sciatica nerve problems" and called the police to remove

---

[1] See Compl., Brady v. Weeks Medical Center, No. 214-2018-CV-00094 (N.H. Super. Ct., Coos Cty., filed Aug. 29, 2018) (Doc. No. 1-1 at 19).

1

him from the hospital.  Plaintiff asserts that his daughter took a video of him lying on the ground in pain.  A police officer can be heard in that video, plaintiff asserts, telling him to get up and stop faking.  Plaintiff alleges further that a friend drove him to another hospital's emergency room, where he was diagnosed and treated for his sciatica pain.  Defendants billed him, according to plaintiff, for treatment he did not receive.

Plaintiff seeks $150,000 for his "illegal detention by the police for almost an hour, [and] pain and suffering," and for the hospital's refusal to help him while still charging him.  He also seeks reimbursement for court fees.

The attachments to the Complaint indicate plaintiff filed claims in state court arising from the same incident against the same defendants.  The Superior Court dismissed that action because plaintiff failed to serve the defendants.  See Brady v. Weeks Medical Center, No. 214-2018-CV-00094 (N.H. Super. Ct., Coos Cnty., Feb. 21, 2019) (Doc. No. 1-1 at 5).  An exhibit attached to the Complaint here is a copy of a notice of appeal, dated May 1, 2019, which appears to have been prepared for filing in the New Hampshire Supreme Court ("NHSC").  See Doc. No. 1-1, at 1, 2.  This court's inquiry into the docket in Brady v. Weeks Medical Center, No. 2018-0692 (N.H.), indicates plaintiff filed his last pleading in that case on March 4, 2019, and the NHSC took no action on the pleading because it was not

filed in a timely manner.  The NHSC has closed that case.

## Preliminary Review Standard

The court reviews complaints filed by plaintiffs who are proceeding in forma pauperis to determine, among other things, whether the plaintiff has asserted any claim upon which relief might be granted.  See 28 U.S.C. § 1915(e)(2), LR 4.3(d)(2).  In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citations omitted).  The court may dismiss an action on preliminary review based on an affirmative defense, if the facts alleged in the complaint, or matters susceptible of judicial notice, conclusively establish the elements of the affirmative defense.  See Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008).

## Claims

Plaintiff claims that the defendants violated his federal rights, giving rise to liability under 42 U.S.C. § 1983; EMTALA; Title VI of the Civil Rights Act of 1964; and the Stark Act, by:

3

- Refusing him medical treatment in the ER;
- Calling the police to have him removed from the ER; and
- Billing him for treatment the defendants did not provide.

Plaintiff also claims the defendants violated his rights under the "Human Rights Act of 1998" and state law, by:

- Allowing him to sign in and admitting him to the ER, but then refusing him medical treatment;
- Calling the police to have him removed from the ER;
- Billing him for treatment the defendants did not provide; and
- Breaching their duty of care.

## Discussion

I. <u>42 U.S.C. § 1983</u>

The Civil Rights Act, 42 U.S.C. § 1983, "provides a cause of action for state deprivations of federal rights," <u>Nieves v. Bartlett</u>, No. 17-1174, 2019 U.S. LEXIS 3556, at *10, 2019 WL 2257157, at *4 (U.S. May 28, 2019). "To state a claim under that statute, a plaintiff must assert two allegations: (1) that some person deprived her of a federal right, and (2) that such person acted under color of state or territorial law."

Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014) (citations and internal quotations omitted). "Significantly, § 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." Id.

Plaintiff does not allege any facts demonstrating, or from which it could be reasonably inferred, that the doctor and hospital named as defendants are state actors subject to suit under § 1983. Accordingly, Plaintiff has failed to state a claim for relief under § 1983, and the district judge should dismiss the § 1983 claims asserted against both defendants.

## II.  The Stark Act

Broadly stated, the Stark Act, 42 U.S.C. § 1395nn, "forbids hospitals to bill Medicare for certain services when the hospital has a financial relationship with the doctor who asked for those services, unless an exception applies." United States ex rel. Bookwalter v. UPMC, 938 F.3d 397, 402 (3d Cir. 2019). The Stark Act does not create a private right to sue for violations of the statute. See id. at 406; Ameritox, Ltd. v. Millennium Labs., Inc., 803 F.3d 518, 522 (11th Cir. 2015); U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc., 675 F.3d 394, 396 (4th Cir. 2012) ("[T]he Stark Law does not create its own right of action[.]"). The district judge should dismiss the Stark Act claims asserted against both defendants for failure to

5

state a claim upon which relief may be granted.  See 28 U.S.C. § 1915(e)(2).

## III. Human Rights Act of 1998

Plaintiff cites a law he calls the "Human Rights Act of 1998" as grounds for relief in this case.  A law in effect in the United Kingdom bears that title.  See Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents.  That law does not provide plaintiff with a cause of action against the defendants here, arising from events occurring in New Hampshire.  Accordingly, the district judge should dismiss the "Human Rights Act of 1998" claims.

## IV.   Defendant Weeks Medical Center

### A.   EMTALA Claim against WMC

EMTALA "is designed to prevent hospital emergency rooms from refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance." Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 51 (1st Cir. 2009) (citation and internal quote omitted).  To this end, EMTALA imposes duties on covered facilities to:  "(a) provide an appropriate medical screening examination for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, such further medical examination and such treatment

6

as may be required to stabilize the medical condition." Id. (citations omitted).

To establish an EMTALA violation, a plaintiff must prove that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

Id. (citation omitted). To succeed under the EMTALA stabilization provision, plaintiff must demonstrate that Dr. Ford, or some other unnamed WMC staff member, determined that he had an emergency medical condition, as that term is defined by § 1395dd(e)(1)(A). See Alvarez-Torres, 582 F.3d at 52.

The court assumes for the purposes of preliminary review that WMC is a participating hospital as defined in 42 U.S.C. §§ 1395cc, 1395dd(e)(2). Plaintiff has sufficiently alleged that he arrived at WMC's emergency room seeking treatment for severe, debilitating sciatica pain. Plaintiff's allegations are sufficient to give rise to a reasonable inference that he had an obvious, potentially emergency medical condition. Although plaintiff does not allege that defendants failed to screen him, he alleges defendants refused to treat him, refused to help him

get to another hospital, and had law enforcement remove him without first stabilizing his pain. See, e.g., Compl. (Doc. No. 1), at 2. Plaintiff's claim that defendant WMC violated the stabilization provision of EMTALA survives preliminary review. In an Order issued this date, the court has directed service of that EMTALA stabilization claim against WMC.

### B. Title VI of the Civil Rights Act against WMC

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Hospitals or other health care providers operating programs that accept Medicare or Medicaid have been deemed to be subject to federal laws prohibiting discrimination by entities that receive "Federal financial assistance." See, e.g., Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001) ("The receipt of Medicare or Medicaid payments qualifies as receiving 'federal financial assistance' under the Rehabilitation Act. 'It is not necessary that federal funds be received for care and treatment of complaining plaintiff.'" (citations omitted)). The court assumes, without deciding, that the WMC's emergency room is a recipient of federal funding making it subject to Title VI's

8

anti-discrimination rules.

A private individual may recover compensatory damages under Title VI against recipients of federal funding only in instances of intentional discrimination.  See Alexander v. Sandoval, 532 U.S. 275, 281 (2001) (citations omitted).  To state a claim for intentional discrimination under Title VI, the plaintiff "must demonstrate, inter alia, that the defendant discriminated on the basis of race, the discrimination was intentional, and the discrimination was a substantial or motivating factor for the defendant's actions."  Goodman v. Bowdoin Coll., 380 F.3d 33, 43 (1st Cir. 2004) (citation omitted).

Plaintiff, who is African American, has asserted that defendants denied him treatment and ejected him from the emergency room because of his race.  Plaintiff has sufficiently alleged a violation of Title VI against defendant WMC to survive preliminary review.  See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004).  In an Order issued this date, the court has directed service of plaintiff's Title VI claim against WMC.

C.  Law against Discrimination Claim against WMC

New Hampshire's Law Against Discrimination recognizes as a civil right, "[t]he opportunity for every individual to have equal access to places of public accommodation without

9

discrimination because of age, sex, gender identity, race, creed, color, marital status, physical or mental disability or national origin." RSA § 354-A:16.  RSA § 354-A:17 states:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the . . . race . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof; or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of . . . race . . . ; or that the patronage or custom thereat of any person belonging to or purporting to be of any particular . . . race . . . is unwelcome, objectionable or acceptable, desired or solicited.

Id.

Construed liberally, the Complaint alleges that the WMC is a place of "public accommodation," and that plaintiff was denied treatment and kicked out of the emergency room because he is African American.  Plaintiff's allegations are sufficient to survive preliminary review of his Law Against Discrimination claim against the WMC.  In an Order issued this date, the court has directed service of that claim against WMC.

D.   Medical Negligence against WMC

A plaintiff states a viable claim of medical negligence in

10

New Hampshire by alleging that he suffered a medical injury, proximately caused by a medical care provider's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered. See Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing RSA § 507-E:2).  In the Complaint, plaintiff has alleged that defendant WMC owed him a duty of treatment when he was admitted to the emergency room, that WNC breached that duty by denying him treatment for his sciatica pain before calling the police to have him removed, and that the breach of that duty caused him additional pain and suffering.  Plaintiff has alleged sufficient facts to survive preliminary review of his medical negligence claim against WMC.  In an Order issued this date, the court has directed service of that claim against WMC.

V.   Defendant Dr. Ford

   A.   Federal Claims against Dr. Ford

       1.   EMTALA Claims against Dr. Ford

Plaintiff seeks to sue Dr. Ford individually under EMTALA, 42 U.S.C. § 1395dd.  EMTALA remedies are available only against participating hospitals, however, not against individual physicians.  See Pujol-Alvarez v. Grupo HIMA-San Pablo, Inc., 249 F. Supp. 3d 591, 597-98 (D.P.R. 2017) (citing 42 U.S.C. § 1395dd(d)(2)(A)); see also Eberhardt v. City of Los Angeles, 62

11

F.3d 1253, 1256 (9th Cir. 1995) ("The plain text of the EMTALA explicitly limits a private right of action to the participating hospital."). As EMTALA does not provide a remedy for the claims against Dr. Ford, the district judge should dismiss plaintiff's EMTALA claim asserted against Dr. Ford, for failure to state a claim upon which relief may be granted.

### 2. Title VI Claims against Dr. Ford

Although an individual employee of an institution that receives federal funds cannot be held liable under Title VI, see Shotz v. City of Plantation, 344 F.3d 1161, 1169-71 & n.11 (11th Cir. 2003), a doctor who personally accepts Medicaid reimbursement may be deemed to be subject to laws precluding discrimination by recipients of Federal financial assistance, see, e.g., Lesley, 81 F. Supp. 2d at 222. Liberally construed, the complaint alleges facts suggesting that Dr. Ford may be sued for intentional discrimination that violates Title VI, as he is alleged to be a physician who treats Medicaid recipients like plaintiff. Accordingly, in the Order issued this date, the court directs service upon Dr. Ford, with respect to plaintiff's Title VI claim.

### B. State Law Claims against Dr. Ford

Plaintiff seeks to sue Dr. Ford for medical negligence and

for violating New Hampshire's "Law Against Discrimination," RSA ch. 354-A. Finding sufficient allegations to warrant service of those claims within this court's supplemental jurisdiction, the Order issued this date directs service of those claims upon Dr. Ford.

## Conclusion

For the foregoing reasons, the district judge should dismiss the § 1983 claims, the "Human Rights Act of 1998" claims, and the Stark Act claims against both Weeks Medical Center and Dr. Ford. In addition, the district court should dismiss the EMTALA claim against Dr. Ford.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

November 12, 2019

cc: Darren Brady, pro se

13